UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| IN THE MATTER OF: | ) | |
| MASSMAN, TRAYLOR, ALBERICI, | ) | |
| A JOINT-VENTURE, AND ITS JOINT | ) | Case No. 4:12-cv-01665 |
| VENTURERS MASSMAN | ) | |
| CONSTRUCTION CO., TRAYLOR | ) | In Admiralty |
| BROS., INC., AND ALBERICI | ) | |
| CONSTRUCTORS, INC., for Exoneration | ) | |
| from or Limitation of Liability. | ) | |

**MEMORANDUM AND ORDER**

**I. BACKGROUND**

This proceeding was instituted on September 14, 2012, upon the filing of a Complaint for

Exoneration from or Limitation of Liability (Doc. No. 1, hereinafter "Complaint" or "Compl."),

pursuant to the Limitation of Liability Act ("Limitation Act" or "Act"), 46 U.S.C. §§30501-30512,

by Plaintiffs Massman, Traylor, Alberici, A Joint-Venture (collectively "Plaintiff" or "MTA"). MTA

is a joint venture engaged in bridge construction, with an office in St. Louis, Missouri. (Compl. ¶ 2.)

MTA owns two barges—BARGE JSA 1506 and BARGE MCC 442—operated on the Mississippi

River within the confines of this district. (*Id*. ¶¶ 3, 7.)

On March 28, 2012, Andrew Gammon, an employee of MTA, died while working aboard

BARGE JSA 1506, located on the Mississippi River north of downtown St. Louis, Missouri.

BARGE MCC 442 was tied off to BARGE JSA 1506 at the time of the incident. (*Id*. ¶¶ 8-9.) The

decedent was in the basket of a man lift located on BARGE JSA 1506, when a piling made contact

with the man lift, causing it to dislodge from the barge and fall into the Mississippi River, resulting

in the decedent's death. (*Id*. ¶ 10.)

MTA alleges that neither the incident nor the decedent's death were "caused or contributed to be caused by any fault, neglect, want of care, or design on the part of Plaintiff BARGE JSA 1506, BARGE MCC 442, or anyone or anything for whom Plaintiff may be responsible." (*Id.* ¶ 12.) Additionally, MTA alleges that the incident and the decedent's death "were occasioned and occurred without fault of Plaintiff and without the privity or knowledge of Plaintiff." (*Id.* ¶ 14.)

MTA claims, upon supporting affidavits, that the value of the two barges involved in the incident is, in total, $215,000.00. (*Id.* ¶ 16.) MTA provided security in this amount in the form of a letter of undertaking provided by MTA's insurer Continental Insurance Company. (*Id.* ¶ 17 & Exh. C.)

On the same date, MTA filed a Motion for Approval of Stipulation for Costs and Security for Value and Directing Issuance of Notice and Restraining Suits. (Doc. No. 3.) On September 18, 2012, the Court granted the motion, consistent with the dictates of the Limitation Act, enjoining the commencement or further prosecution of any action or proceeding against MTA in connection with the incident. (Doc. No. 8.) The Court, further, issued a notice of the injunction on that date, publication of which was undertaken by attorneys for MTA. (Doc. No. 10.)

MTA filed an Amended Complaint for Exoneration from or Limitation of Liability on October 4, 2012, adding joint venturers Massman Construction Co., Traylor Bros., Inc., and Alberici Constructors, Inc., in their individual capacities, as Plaintiffs. (Doc. No. 11.) (As no injunction was issued in connection with the Amended Complaint, the Court will continue to refer to the entities, together, as "Plaintiff" or "MTA" in this opinion.)

On October 23, 2012, Claimants Tracy Gammon, E.A.G., E.K.G, Edward Gammon, and Carolyn Gammon ("Claimants") filed a Motion to Dismiss Limitation of Liability Complaint and to Dissolve Stay Order. (Doc. No. 12.) Tracy Gammon is the widow of the decedent. E.A.G. and

E.K.G. are the surviving minor children of the decedent. Edward and Carolyn Gammon are the surviving parents of the decedent.

On December 10, 2012, Claimants filed: (1) an Answer to the Amended Complaint (Doc. No. 24); (2) a Motion to Increase Limitation Fund (Doc. No. 25); and (3) a Motion to Dissolve Stay and Injunction, with Stipulations (Doc. No. 26). Included within Claimants' Answer (Doc. No. 24) are claims against Plaintiff under the Jones Act, under Missouri's Survivorship Act, under Missouri's Wrongful Death Act, and for negligence. Claimants additionally filed a memorandum of law in support of their Answer on December 10, 2012. (Doc. No. 25.) MTA filed a Motion to Dismiss Claimants' Answer on January 18, 2013. (Doc. No. 35.)

Now pending before the Court, then, are: (1) Claimants' Motion to Dismiss Limitation of Liability Complaint and to Dissolve Stay Order (Doc. No. 12); (2) Claimants' Motion to Increase Limitation Fund (Doc. No. 25); (3) Claimants' Motion to Dissolve Stay and Injunction, with Stipulations (Doc. No. 26); and (4) Plaintiff's Motion to Dismiss Claimants' Answer (Doc. No. 35). These motions are fully briefed and ready for disposition.

## II. THE COURT'S JURISDICTION AND LIMITED ROLE WITH RESPECT TO THE PENDING MOTIONS

The Court has jurisdiction pursuant to 28 U.S.C. § 1333(1). As will be discussed in greater detail below, "[w]hile 28 U.S.C. § 1333(1) does grant to the federal district courts exclusive jurisdiction over suits brought pursuant to the Limitation Act, *see Ex Parte Green*, 286 U.S. 437, 439-40, 52 S.Ct. 602, 76 L.Ed. 1212 (1932), the same statute also 'sav[es] to suits in all cases all other remedies to which they are entitled.'" *Riverway Harbor Serv., St. Louis, Inc. v. Bridge & Crane Inspection, Inc.*, 263 F.3d 786, 791 (8th Cir. 2001) (quoting 28 U.S.C. § 1333(1)). Hence, "two jurisdictional possibilities" are presented: "shipowners desire exclusive federal jurisdiction to

limit their liability and avoid encountering a jury trial, and claimants seek 'other remedies' such as jury trials in state court." *Id*. (citing cases).

"Normally, the federal court will resolve this conflict by recognizing an exception in which a claimant acknowledges, through certain stipulations, the shipowner's right to limit the amount of its liability in federal court while preserving the claimant's right to have a jury determine in state court whether the shipowner is liable." *Id*. (citing cases). "Upon the claimant's filing sufficient stipulations, the admiralty court should allow the claimant to proceed even when the claim exceeds the limitation fund." *Magnolia Marine Transp. Co., Inc. v. Laplace Towing Corp.*, 964 F.2d 1571, 1575 (5th Cir. 1992) (citing cases); *see also Langnes v. Green* 282 U.S. 531, 541, 51 S.Ct. 243, 75 L.Ed. 520 (1931) ("To retain the cause would be to preserve the right of the shipowner, but to destroy the right of the suitor in the state court to a common law remedy; to remit the cause to the state court would be to preserve the rights of both parties. The mere statement of these diverse results is sufficient to demonstrate the justice of the latter course ….").

The Court has issued an injunction pursuant to Fed.R.Civ.P. Supp. Rule F(3), which provides: "Upon compliance by the owner with the requirements of subdivision (1) of this rule all claims and proceedings against the owner or the owner's property with respect to the matter in question shall cease. On application of the plaintiff the court shall enjoin the further prosecution of any action or proceeding against the plaintiff or the plaintiff's property with respect to any claim subject to limitation in the action."

The question currently before the Court is a narrow one—whether or not to lift the injunction so that Claimants may proceed with their claims in a forum of their choosing.

The Court's role at this juncture is not to rule on the underlying merits of the parties' claims, and to thereby shape the substance of the litigation going forward. *Cf. In re McCarthy Bros. Co. /*

*Clark Bridge*, 83 F.3d 821, 826-33 (7th Cir. 1996) (vacating district court's "entirely gratuitous" findings concerning merits where district court had grounds to dissolve injunction); *In re Chinese Mar. Trust, Ltd.*, 478 F.2d 1357, 1361 (2d Cir. 1973) (affirming district court's dissolution of injunction and "[i]n so holding ... intimat[ing] no view as to the merits of the [claimant's] claim or the defenses or counterclaims that may be asserted by the owner against it").[1]

Two of the four motions pending before the Court—(1) Claimants' Motion to Dismiss Limitation of Liability Complaint and to Dissolve Stay Order (Doc. No. 12) and (2) Plaintiff's Motion to Dismiss Claimants' Answer (Doc. No. 35)—ask the Court to delve into the merits, however. Specifically, they reach matters concerning exclusively (1) Plaintiff's liability and (2) the viability of Claimant's claims, respectively. Both motions will, accordingly, be DENIED without prejudice, as they address matters outside the Court's present purview.[2]

Remaining for the Court's consideration and disposition, then, are (1) Claimants' Motion to Dissolve Stay and Injunction, with Stipulations (Doc. No. 26) and (2) Claimants' Motion to Increase Limitation Fund (Doc. No. 25). For the reasons discussed below, Claimants' Motion to Dissolve

---

[1] For instance, in *JNB Marine, Inc. v. Stodghill*, 769 F. Supp. 2d 1028 (E.D. Va. Mar 08, 2011), where a barge owner simultaneously (1) opposed dissolution of an injunction entered pursuant to the Limitation Act and (2) sought dismissal of the claimant's personal injury claims as a matter of law, the court observed that the owner "straddle[d] the line between legitimate use of the limitation procedure and 'attempting to use the Petition for Limitation of Liability as an offensive weapon.'" *Id*. at 1032 (quoting *Lake Tankers Corp. v. Henn*, 354 U.S. 147, 152–53, 77 S.Ct. 1269, 1 L.Ed.2d 1246 (1957)). The court then noted that dissolving the injunction "does not prejudice the plaintiffs' ability to contest [the claimant's] seaman status and their liability in the state court proceeding, nor does it prejudice their right to seek limitation in this court, if they are adjudged liable to [the claimant]." *Id*. at 1033.

[2] Plaintiff's Motion to Dismiss Claimants' Answer (Doc. No. 35) further seeks dismissal of Claimants' Answer and Claims (Doc. No. 24) as untimely filed. Upon the Court's review of the record, the Court deems Claimants' Answer and Claims to have been timely filed under Fed.R.Civ.P. Supp. Rule F(5).

Stay and Injunction, with Stipulations will be GRANTED, while Claimants' Motion to Increase Limitation Fund will be DENIED without prejudice.

## III. DISCUSSION

At base, this case concerns the ability of Claimants—the decedent's survivors—to sue Plaintiff in the forum of their choosing for injuries arising out of the decedent's death. As noted above, federal courts have exclusive jurisdiction over admiralty and maritime claims, such as this one, but the jurisdictional statute "sav[es] to suitors in all cases all other remedies to which they are otherwise entitled." 28 U.S.C. § 1333(1). Another statute—the Limitation Act—grants vessel owners the right to seek limited liability in federal court for claims of damage aboard their vessels. *See* 46 U.S.C. §§ 30501-30512.

"The Act allows a vessel owner to limit liability for damage or injury, occasioned without the owner's privity or knowledge, to the value of the vessel or the owner's interest in the vessel." *Lewis v. Lewis & Clark Marine, Inc.*, 531 U.S. 443, 121 S.Ct. 993, 148 L.Ed.2d 931 (2001). The Act was passed by Congress in 1851 in order "to encourage ship-building and to induce capitalists to invest money in this branch of industry." *Id.* (quoting *Norwich & N.Y. Transp. Co. v. Wright*, 13 Wall. 104, 121, 20 L.Ed. 585 (1871)).

"The Act is not a model of clarity," and as drafted it lacked procedures making it amenable to execution. *Id.* at 447, 121 S.Ct. 993 (citing 2 T. Schoenbaum, Admiralty and Maritime Law 299 (2d ed. 1994)). Procedures have been developed over time by the Supreme Court, however, which are now found in the Federal Rules of Civil Procedure at Supplemental Admiralty and Maritime Claims Rule F. *See id.* at 448, 121 S.Ct. 993. As the Supreme Court explained in *Lewis*:

> Rule F sets forth the process for filing a complaint seeking exoneration from, or limitation of, liability. The district court secures the value of the vessel or owner's interest, marshals claims, and enjoins the prosecution of other actions with respect to the claims. In these proceedings, the court, sitting without a jury, adjudicates the

claims. The court determines whether the vessel owner is liable and whether the owner may limit liability. The court then determines the validity of the claims, and if liability is limited, distributes the limited fund among the claimants.

*Id.*

The Limitation Act exists in tension with the savings to suitors clause, as "[o]ne statute gives suitors the right to a choice of remedies, and the other statute gives vessel owners the right to seek limitation of liability in federal court." *Id.* At the core of the conflict is the fact that "[t]here is no right to a jury in actions instituted in admiralty, and the claimants are enjoined from pursuing common law actions in other forums." *In re Dammers & Vanderheide & Scheepvaart Maats Christina B.V.*, 836 F.3d 750, 755 (2d Cir. 1988). The conflict derives from the Seventh Amendment, which applies only to cases brought at common law, not to those brought in admiralty. *See Waring v. Clarke*, 46 U.S. (5 How.) 441, 458-60, 12 L.Ed. 226 (1847).[3]

Seeking to resolve this tension and conflict, federal courts have recognized that, in two kinds of limitation cases, claimants are permitted to pursue their remedies in a forum of their choosing. *See Universal Towing v. Barrale*, 595 F.2d 414, 418 (1979). The first exception concerns cases where the limitation fund exceeds the total of all claims. *Id.* (citing cases). This exception is not at issue here. The second exception, which is at issue here, "exists if there is only one claim which exceeds the value of the fund." *Id.* (citing cases). The so-called "single claim exception" applies in circumstances involving, obviously, a single claimant, but it also applies in circumstances involving multiple claimants, who may try liability and damages issues in another forum by filing stipulations that protect the shipowner's right to have the federal court, sitting in admiralty, ultimately adjudicate its claim to limited liability. *See, e.g.*, *In re Ill. Marine Towing, Inc.*, 498 F.3d 645, 652 (7th Cir.

---

[3] While Congress can provide for jury trials in admiralty cases, as it has done under the Jones Act, the Seventh Amendment itself does not provide a right to a jury trial in admiralty. *See Fitzgerald v. United States Lines Co.*, 374 U.S. 16, 20, 83 S.Ct. 1646, 1650, 10 L.Ed.2d 720 (1963).

2007); *Beiswenger Enters. Corp. v. Carletta*, 86 F.3d 1032, 1037 (11th Cir. 1996); *Universal Towing*, 595 F.2d at 418-419.

Where one of these two exceptions applies, "it is an abuse of the court's discretion to fail to dissolve the injunction against other legal proceedings, and thus deprive a claimant of his choice of forum." *Valley Line Co. v. Ryan*, 771 F.2d 366, 373 (8th Cir. 1985).

Moreover, in order that the shipowner's right to limit its liability is preserved in accordance with the Act, a claimant must file certain stipulations with the district court before the injunction may be dissolved. Specifically, a claimant must: (1) concede that the district court has exclusive jurisdiction to determine all issues relating to the shipowner's right to limit its liability, including determination of the value of the limitation fund; and (2) waive any right to claims of res judicata based on a judgment from another forum. *See Magnolia Marine*, 964 F.2d at 1575 (citing cases); *Valley Line*, 771 F.2d at 373 & n.3 (8th Cir. 1985) (citing cases); *see also Riverway Harbor*, 263 F.3d at 792 ("As long as a claimant stipulates to exclusive federal jurisdiction for limitation of liability purposes, that claimant may also pursue any other claims dealing with exoneration from liability in state court pursuant to the savings to suitors clause.").

The question before the Court, then, is whether Claimants' stipulations are adequate to preserve "exclusive federal jurisdiction for limitation of liability purposes" (*Riverway Harbor*, 263 F.3d at 792), such that Claimants may proceed in the forum of their choosing pursuant to the savings to suitors clause. For the reasons below, the Court finds that Claimants' stipulations are adequate and that the injunction should be dissolved.

A.     **Claimants' Stipulations Are Sufficient to Satisfy the Single Claim Exception**

Claimants have filed a series of stipulations in connection with their Motion to Dissolve Stay and Injunction, with Stipulations (Doc. No. 26). These stipulations can be found in full at Appendix

A of this opinion. At Appendix B of this opinion are the claimants' stipulations in *Jefferson Barracks Marine Serv., Inc. v. Casey*, 763 F.2d 1007 (8th Cir. 1985), which the *Jefferson Barracks* court found satisfied the single claim exception, and which the Court finds particularly instructive here.[4]

MTA has lodged a series of objections to Claimants' stipulations, asserting for various reasons that they are insufficient. First, MTA asserts that, because of the identity of the Claimants, this case is necessarily a multiple claimant action that does not fall within the single claim exception. Second, MTA contends that Claimants' stipulations are inadequate to protect the limitation fund from possible indemnity and/or contribution claims by as-yet-unnamed co-defendants. Third, MTA argues that Claimants must stipulate to the value of the limitation fund. Fourth, in MTA's view, Claimants' res judicata stipulations fall short of protecting fully the limitation fund from possible judgments in other fora. And, lastly, MTA asserts that Claimants must stipulate to the priority of their claims.

In general, MTA, in its objections to Claimants' stipulations, conflates what would be ideal (for MTA) with what is required by law. MTA confuses what some claimants have stipulated to in prior similar cases with what those claimants needed to do, and thus demands an unnecessary array of stipulations from Claimants here.

## 1. The Identity of Claimants Does Not Remove this Case from the Single Claim Exception

MTA suggests that the only proper claimants in this action are the decedent's surviving spouse and children—that the decedent's parents (who are also named claimants) may not proceed

---

[4] The core of the stipulations in *Jefferson Barracks*: (1) reserved to the federal court jurisdiction over the value of the limitation fund and the plaintiff's right to limit liability; (2) waived any claims of res judicata arising out of state court proceedings insofar as they concerned the value of the limitation fund and the plaintiff's right to limit liability; and (3) prioritized the claims of a second claimant, in a second action, seeking redress in connection with the death of a second passenger in the incident before the *Jefferson Barracks* court. Claimants' stipulations in the instant case plainly satisfy (1) and (2), and they need not address (3), as there is no second action here. *Compare* Appx. A at Stip. Nos. 1-5 *with* Appx. B at Stip. Nos. 2-3.

as claimants in this action. Following from this argument, MTA claims this action, accordingly, does not fall within the single claim exception.

MTA's argument is based on the premise that the exclusive remedies available to Claimants arise under only (1) the Jones Act or (2) the Longshore and Harbor Workers' Compensation Act ("LHWCA"), neither of which, MTA asserts, permits the decedent's parents to proceed as claimants. As explained above, the Court declines to reach into the underlying merits of this action, *i.e.*, the Court declines to opine upon how the parties must proceed upon dissolution of the injunction. For present purposes, it is sufficed to say the Court trusts that the forum chosen by Claimants upon dissolution of the injunction will be as capable as this Court to sort through the entitlement of Claimants to relief and the nature of such relief. *See Jefferson Barracks*, 763 F.2d at 1009.[5]

2. **Claimants Need Not Enter into Stipulations Regarding Indemnity and/or Contribution Claims by Co-Defendants**

MTA asserts that "claimants' stipulations fail adequately to protect MTA from claims by co-defendants in any state court action." Plaintiff's Memorandum Opposing Claimants' Motion to Dissolve Stay and Injunctions (Doc. No. 33, hereinafter "Plaintiff's Opp. Br.") at 4. MTA's fear is

---

[5] In the Court's view, *Jefferson Barracks* dictates resolving questions regarding the proper claimants in this action only after the injunction is lifted. In *Jefferson Barracks*, the claimants moving to dissolve the injunction were (1) the decedent's common-law wife at the time of his death, (2) the minor son of the decedent and his common-law wife, (3) two adult daughters from the decedent's first marriage, and (4) an adult daughter from the decedent's second marriage. *See id.* at 1008-09. (The decedent had been married a total of four times, prior to entering into a common-law marriage with the first-mentioned claimant. The decedent had four children, via two marriages and one common-law marriage, each of whom were claimants. *Id.*) The five claimants in *Jefferson Barracks* were either a plaintiff or intervenor-plaintiff in a wrongful death action that had been instituted in state court. *Id.* at 1008. There were "disputes among the claimants themselves about certain aspects of the family history," including whether all of the claimants were in fact related to the decedent. *Id.* Due to these "conflicting views as to the identities of [the decedent's] wives and children," and the perceived specter of uncertain future claimants they raised, the district court denied the claimant's motion to dissolve the injunction. *Id.* In the view of the Court of Appeals, however, "[t]hese disputes [were] between parties who [were] before the state and federal courts," and "[t]he state court can sort out these conflicting claims as well as a federal court." *Id.* at 1009.

that "[i]f the claimants seek to enforce [a] judgment against ... co-defendants, the co-defendants could, in turn, seek indemnity or contribution from MTA." *Id.* At present, there is no pending action against MTA, and there are no co-defendants. Regardless, the law in this Circuit and multiple others is clear that Claimants' stipulations need not take into account the possibility of presently-non-existent indemnification and/or contribution claims.

In this Circuit, "an indemnity claim does not by itself create a multiple-claim situation." *Universal Towing Company v. Barrale*, 595 F.2d 414, 419 (8th Cir. 1979) (holding that a third party's indemnification claim and claimant's damage award against a barge owner "constitute a single claim for purposes of the limitation proceeding").[6] "[T]he claim of an injured party and the indemnity claim of a third party are treated as a single claim [because] the indemnity claim is merely derivative of the one presented by the claimant." *Id.* (citations omitted). "[T]here is ultimately only one enforceable damage award against the owner." *Id.*; *see also Helena Marine Serv., Inc. v. Sioux City & New Orleans Barge Lines, Inc.*, 564 F.2d 15, 19 & n.5 (8th Cir. 1977) ("The nature of an indemnity claim suggests that between them, [the claimant] and [a third party] could recover from [the shipowner] no more than the amount of a single judgment in favor of [the claimant]."). Other Circuits have concluded similarly regarding indemnification claims, as well as contribution claims. *See, e.g.*, *McCarthy Bros.*, 85 F.3d at 832 ("the mere possibility of [additional claims for contribution or indemnification] is not enough to preclude state court adjudication"); *S & E Shipping Corp. v. Chesapeake & O. Ry. Co.*, 678 F.2d 636, 645 (6th Cir. 1982) (indemnity and contribution claims of

---

[6] The *Universal Towing* court did note that where a third party seeks attorney's fees and costs atop an indemnity claim, "a single claim situation ceases to exist" unless the claimant stipulates to the priority of the third party's fees and costs claim. *Id.* Claimants' have done precisely this in the instant case, stipulating: "[I]f Plaintiffs are held responsible for attorney's fees and costs which may be assessed against them by a co-liable defendant party seeking indemnification for attorney's fees and costs, such claims shall have priority over the claim of Claimants herein." Appx. A at Stip. No. 4.

joint tortfeasors against shipowner do not create multiple claims situation as such claims are "derived from and … dependent upon the primary claim against the shipowner").

MTA relies on two cases from other Circuits to support its argument that Claimants must stipulate now as to potential indemnity and/or contribution claims by third parties: *In re Port Arthur Towing Co. on behalf of M/V Miss Carolyn*, 42 F.3d 312 (5th Cir. 1995) and *In re Dammers & Vanderheide & Scheepvaart Maats Christina B.V.*, 836 F.3d 750 (2d Cir. 1988). Upon a careful reading of *Port Arthur Towing* and *Dammers*, however, the Court believes these cases are readily squared with the authority—and particularly the binding authority from this Circuit—discussed above.

In *Port Arthur Towing*, shipowners filed a suit under the Limitation Act after a state court proceeding had been commenced by the claimants, and the entity seeking indemnification was a named co-defendant in the state court proceeding. *Id*. at 314. The Fifth Circuit deemed a proposed stipulation to limit liability as to all necessary parties insufficient because, although signed by the two claimants in the pending state court action, the co-defendant seeking indemnity refused to enter into it. *Id*. at 316. No such scenario is before the Court here. There is neither a pending action in another forum nor a named co-defendant. MTA's bare contention that Claimants' stipulations require the signature of an as-yet-unidentified co-defendant is unpersuasive.

There is, of course, likely to be an action in another forum once the injunction is dissolved, and in that action there may be one or more co-defendants. Given this likelihood, the Court turns to *Dammers*. In *Dammers*, the court concluded that "the procedures employed by the district court," in combination with a provision in the claimants' stipulations, were sufficient to "ensure that a shipowner will not face liability in excess of the limitation fund." *Id*. at 759. The relevant stipulation in *Dammers* read:

> [I]n the event there is a judgment or recover in *any* state court *actions* in excess of $7,671,000 [the value of the vessel at issue and its cargo] whether against the

plaintiffs, or any other liable parties who may cross-claim or claim over against the plaintiffs, in no event will [claimants] seek to enforce said excess judgment or recovery insofar as same may expose plaintiffs to liability in excess of SEVEN MILLION SIX HUNDRED SEVENTY-ONE THOUSAND ($7,671,000.00) DOLLARS pending the adjudication of Limitation of Liability in the District Court.

*Id* (emphasis in original).

The *Dammers* court found this stipulation "embodies the claimants' intention that the shipowners shall not, under any set of circumstances, be exposed to liability in excess of the limitation fund" as determined by the admiralty court. *Id.* The same is true in the instant case, where Claimants have stipulated:

> In order to afford sufficient protection from excess liability arising out of third party claims where indemnification or contribution is or may be sought by other defendants pending the resolution of all claims in the limitation proceeding, in the event there is *a judgment or recovery by claimant in any state court action or proceeding of any type* in excess of the value of the Limitation Fund determined in accordance with 46 U.S.C.A. § 30511 and Supplemental Admiralty and Maritime Claims Rule F, 28 U.S.C.A. [*sic*], in no event will Claimant seek to enforce such excess judgment or recover against MTA, insofar as such enforcement may expose MTA's liability in excess of the adjudicated total Limitation Fund value, until such time as there has been an adjudication of limitation by this Court, which has exclusive jurisdiction and authority to determine all issues relevant to MTA's claim for limitation of liability.

Appx. A at Stip. No. 5.

Indeed, Claimants' language "*a* judgment or recovery by claimant in *any* state court action or proceeding of *any* type" (emphasis added) is arguably broader than, but at minimum substantively equivalent to, the operative language in *Dammers*, "*any* state court *actions*"—a revision by the claimants in *Dammers* based on concerns expressed by the appellate panel at oral argument regarding earlier language "*the* State Court action." *Dammers*, 836 F.2d at 759.

In the instant dispute, consistent with the *Dammers* court's interpretation of the stipulation before it, Claimants are stipulating that MTA will not be exposed to liability in excess of the limitation fund via *any* judgment, whether against MTA or potential co-defendants. *See id.*; *see also, e.g.*,

Merriam-Webster's Collegiate Dictionary (10th ed. 2002) at 1 (the indefinite article "a" means "any" as in "a man who is sick can't work"); The Random House Collegiate Dictionary (1980) at 1 (the indefinite article "a" means "any one of some class or group" as in "a man"). Claimants' stipulation, here, is sufficient and, in this Circuit, more than is required.

Further, it is evident to the Court, under the law governing this case, and as observed by the district court in *Dammers*, that MTA is entitled to seek, and the Court would be obligated to grant, a stay of any indemnity or contribution claims by third parties in a separate proceeding in any forum, unless those third parties executed appropriate stipulations preserving MTA's right to limitation. *See In re Dammers & Vanderheide & Scheepvaart Maats Christina B.V.*, 660 F. Supp. 153, 159 (S.D.N.Y. 1987), *aff'd*, 836 F.3d 750 (2d Cir. 1988). No third party may directly or indirectly utilize the benefits of issue preclusion to undermine MTA's right to limitation. *See id.* at 159 & n.8. And, under standard practice in a case such as this, the Court will retain jurisdiction and continue to stay the entry of judgment and consequent enforcement of any recovery achieved, before any forum, pending the outcome of this limitation proceeding, in order to preserve MTA's right to limitation.

### 3. Claimants Are Not Required to Stipulate to the Value of the Limitation Fund

MTA contends that "claimants refuse to stipulate to the amount of the limitation fund." Plaintiff's Opp. Br. at 6. This is true. Claimants are not required, however, to stipulate to the value of the limitation fund.

"As long as a claimant stipulates to exclusive federal *jurisdiction* for limitation of liability purposes, that claimant may also pursue any other claims dealing with exoneration from liability in state court pursuant to the savings to suitors clause." *Riverway*, 263 F.3d at 792 (citing *Lewis*, 531 U.S. at 455, 121 S.Ct. 993) (emphasis added).

In other words, so long as Claimants stipulate to the Court's jurisdiction over the limitation fund, as they do, they need not stipulate, further, to the amount of the limitation fund. *See, e.g.*, *Norfolk Dredging Co. v. Wiley*, 439 F.3d 205, 210 (4th Cir. 2006) ("Stipulating that the fund, *whatever its amount*, is the limit of Norfolk Dredging's liability insulates Norfolk Dredging from overpaying just as would a stipulation to its precise amount. We cannot see how saving for another day the question of Norfolk Dredging's amount of liability prejudice[s] its general right to limit liability.") (emphasis added); *In re Two "R" Drilling Co., Inc.*, 943 F.2d 576, 578 (5th Cir. 1991) (where the value of the limitation fund is disputed, so long as "the parties have agreed that the amount of the limitation must be resolved in the federal court, and the federal court has retained jurisdiction in the event that issue has to be resolved" then "[t]he admiralty jurisdiction of the federal court and the rights of [the shipowner] are fully protected"); *Midland Enters., Inc. Hartley Marine Corp. v. Brasher*, 886 F.2d 812, 816-17 (6th Cir. 1989) (discussing cases) (declining to hold that claimant must stipulate to "the value placed on the ship and freight" by vessel owner); *id.* at 817 (noting that "the stipulations filed by the claimant which the [the Eight Circuit in] *Jefferson Barracks* … found to be adequate did *not* concede value" and that "[a]ll the claimant conceded [in *Jefferson Barracks*] was the district court's right to ultimately determine the proper value of the limitation fund") (emphasis in original).

### 4. Claimants' Res Judicata Stipulations Are Sufficient

MTA next argues that Claimants have failed to waive, "here and now, any claims of res judicata," and that Claimants' stipulation in this regard is insufficient because it purportedly does not "refer to any court other than this court." Plaintiff's Opp. Br. at 7. The Court does not agree. Claimants have stipulated:

> [I]n the event there is *a judgment or recovery by claimant in any state court action or proceeding of any type* in excess of the value of the Limitation Fund determined

in accordance with 46 U.S.C.A. § 30511 and Supplemental Admiralty and Maritime Claims Rule F, 28 U.S.C.A. [*sic*], in no event will Claimant seek to enforce such excess judgment or recover against MTA, insofar as such enforcement may expose MTA's liability in excess of the adjudicated total Limitation Fund value, until such time as there has been an adjudication of limitation by this Court, which has exclusive jurisdiction and authority to determine all issues relevant to MTA's claim for limitation of liability.

Appx. A at Stip. No. 5 (emphasis added).

Claimants have waived their right to seek recovery in excess of the limitation fund, once determined, by virtue of a judgment "in any state court action or proceeding of any type." *Id.* When read together with Claimants' stipulation "consent[ing] to waive any claims of res judicata relevant to the issue of limitation of liability on any judgment that may be rendered in both federal and state courts," it is clear that Claimants have in fact waived any claims of res judicata arising from any proceeding in another forum.

### 5.       Claimants' Stipulations Need Not Include a Prioritization of Claims

Lastly, MTA asserts that, unless Claimants "stipulate to the priority of their claims," MTA is "not fully protected from the liability in excess of the amount of the limitation fund." Plaintiff's Opp. Br. at 8. MTA is incorrect.

Claimants are not required to stipulate to the priority of their claims because, quite simply, the Federal Rules already dictate pro rata distribution among claimants and, therefore, such means of distribution is per se sufficient to protect MTA from excess liability. Nothing more is necessary.[7] *See, e.g.*, *In re Tidewater, Inc.*, 249 F.3d 342, 347 (5th Cir. 2001) ("The claimants' stipulation of payment of claims on a pro rata basis adequately prioritizes the claims."); *Bouchard Transp. Co., Inc.*

---

[7] Specifically, the Federal Rules provide: "Upon determination of liability the fund deposited or secured, or the proceeds of the vessel and pending freight, shall be divided pro rata, subject to all relevant provisions of law, among the several claimants in proportion to the amounts of their respective claims, duly proved, saving, however, to all parties any priority to which they may be legally entitled." Fed.R.Civ.P. Supp. Rule F(8).

*v. Updegraff*, 147 F.3d 1344, 1347 (11th Cir. 1998) ("Rule F implements the provisions of the Limitation Act by providing a mechanism for the pro rata distribution among claimants of the fund created by the Limitation Act's liability limits."); *Valley Line*, 771 F.2d at 372 (citing *Lake Tankers*, 354 U.S. at 151-152, 77 S.Ct. 1269; *S & E Shipping*, 678 F.2d at 642; *Universal Towing*, 595 F.2d at 417) ("[limitation] proceedings are not intended to prevent a multiplicity of lawsuits, but rather to provide, in an equitable fashion, for the marshalling of assets and the distribution pro rata of an inadequate fund among claimants—none of whom can be paid in full"); *see also, e.g.*, *Illinois Marine Towing*, 498 F.3d at 652 n.5 (questioning "whether the pro rata distribution stipulation is even necessary since Rule F(8) already requires pro rata distribution if the district court limits liability.").

In other words, so long as all questions of limitation of liability are reserved for the Court, as they are here, distribution of the limitation fund will be pro rata because the Federal Rules so dictate. Thus, while Claimants certainly could stipulate to a pro rata distribution, the Court does not see how such a stipulation—redundant of the Federal Rules—is required.

## B.     Claimants' Motion to Increase the Limitation Is Premature

Claimants have filed a Motion to Increase Limitation Fund (Doc. No. 25), in which they argue that the limitation fund should be increased, pursuant to the "flotilla doctrine," to reflect the combined value of all vessels taking part in the operation that Claimants link to the decedent's passing.  *See generally Sacramento Navigation Co. v. Salz*, 273 U.S. 326, 47 S.Ct. 368, 71 L.Ed. 663 (1927); *Liverpool, Brazil, & River Plate Steam Navigation Co. v. Brooklyn E. Dist. Terminal*, 251 U.S. 48, 40 S.Ct. 66, 64 L.Ed. 130 (1919); *Standard Dredging Co. v. Kristiansen*, 67 F.2d 548, 551 (2d Cir. 1933) (cases establishing the "flotilla doctrine").  Because this issue may be rendered moot if Claimants' judgment in their chosen forum does not exceed the limitation fund as it now stands, the Court believes the issue should be set aside until such time as it becomes relevant.  *See, e.g.*, *World*

*Tanker Carriers Corp. v. M/V Ya Mawlaya*, 1996 WL 20874, at *3 (E.D. La. Jan. 18, 1996), *rev'd on other grounds*, 99 F.3d 717 (5th Cir. 1996) (citing Benedict on Admiralty, V.3, § 67 (1975); G. Gilmore & C. Black, Jr., The Law of Admiralty, § 10-34 (2d Ed. 1975)) ("The better procedure as to [an] increase in the limitation fund is to wait on the conclusion of the limitation action, and to increase the security if the owner is found entitled to limitation and the limitation fund is inadequate.").

In addition, the Court is concerned that, were it to entertain Claimants' motion at present, the absence of evidence developed thus far in the proceeding may result in an erroneous resolution of the matter. *See, e.g.*, *In re Marquette Transp. Co., LLC*, 2011 WL 1486119, at *3 (E.D. La. Apr. 18, 2011) (denying motion to increase limitation fund as premature where, *inter alia*, evidence was lacking to determine whether limitation fund would be sufficient to satisfy claims).

Therefore, the court denies Claimants' motion to increase the limitation fund, but will permit Claimants to renew it in the limitation action, if necessary. *See Norfolk Dredging Co. v. Wiley*, 357 F. Supp. 2d 944, 951 (E.D. Va. 2005), *aff'd*, 439 F.3d 205 (4th Cir. 2006) (postponing consideration of motion to increase limitation fund after granting motion to dissolve injunction).

## IV. CONCLUSION

**IT IS HEREBY ORDERED** that Claimants' Motion to Dismiss Limitation of Liability Complaint and to Dissolve Stay Order (Doc. No. 12), Claimants' Motion to Increase Limitation Fund (Doc. No. 25), and Plaintiff's Motion to Dismiss Claimants' Answer (Doc. No. 35) are **DENIED** without prejudice, in accordance with the foregoing.

**IT IS FURTHER ORDERED** that Claimants' Motion to Dissolve Stay and Injunction, with Stipulations (Doc. No. 26) is **GRANTED**, for the reasons provided herein. Accordingly, the injunction and stay entered by the Court on September 18, 2012 (Doc. No. 8) is **DISSOLVED**.

**IT IS FURTHER ORDERED** that a stay of entry of judgment and consequent enforcement of any recovery achieved in a proceeding pending the outcome of this limitation proceeding is entered..

**IT IS FINALLY ORDERED** that the Clerk of the Court shall administratively close this file, which shall be subject to reopening on motion of either party as warranted.

**IT IS SO ORDERED.**

Dated this 26th day of February, 2013.

/s/Jean C. Hamilton
UNITED STATES DISTRICT JUDGE

1. Claimants, concede that Plaintiffs are entitled to and have the right to litigate all issues relating to limitation of liability pursuant to the provisions of to [*sic*] the Limitation of Liability Act, 46 U.S.C. §§ 30501-30512 in this Court, but Claimants specifically reserve the right to deny and contest in this Court all assertions and allegations made by Plaintiffs in the first Amended Complaint for Exoneration From or Limitation of Liability, and/or any other pleadings filed or to be filed herein.

2. Claimants will not seek in any state court or federal court in which a jury trial has been demanded, any judgment or ruling on the issue of MTA's right to limitation of liability, and hereby consent to waive any claims of res judicata relevant to the issue of limitation of liability on any judgment that may be rendered in both federal and state courts.

3. Claimants herein, while not stipulating to or agreeing to $215,000.00 as the combined value of Plaintiff's interest in the vessels properly the subject of this limitation action (as alleged in MTA's Stipulation and Affidavit of John T. Stockmann, Docket No. 11-1), hereby stipulate that in the event the Claimants attain judgment or recover in any state court or common law forum, whether against MTA or any other liable party or parties who may make a cross-claim over and against MTA, in no event will claimants seek to enforce that excess judgment or recovery insofar as the same may expose MTA to liability in excess of the total value of the Limitation Fund as to be determined this [*sic*] Court, once final judgment on the issue the [*sic*] value of the Limitation Fund has need [*sic*] entered.

4. Claimants herein stipulate and agree that if Plaintiffs are held responsible for attorney's fees and costs which may be assessed against them by a co-liable defendant party seeking indemnification for attorney's fees and costs, such claims shall have priority over the claim of Claimants herein.

5. In order to afford sufficient protection from excess liability arising out of third party claims where indemnification or contribution is or may be sought by other defendants pending the resolution of all

claims in the limitation proceeding, in the event there is a judgment or recovery by claimant in any state court action or proceeding of any type in excess of the value of the Limitation Fund determined in accordance with 46 U.S.C.A. § 30511 and Supplemental Admiralty and Maritime Claims Rule F, 28 U.S.C.A. [*sic*], in no event will Claimant seek to enforce such excess judgment or recover against MTA, insofar as such enforcement may expose MTA's liability in excess of the adjudicated total Limitation Fund value, until such time as there has been an adjudication of limitation by this Court, which has exclusive jurisdiction and authority to determine all issues relevant to MTA's claim for limitation of liability.

Stipulations of Claimants, incorporated in Claimants' Motion to Dissolve Stay and Injunction, with Stipulations.  (Doc. No. 26.)

# APPENDIX B

1. That if the District Court saw fit to dissolve its Order of Injunction, dated March 29, 1984, which prohibited Appellants from maintaining a direct action against Appellees in state court, Appellants would proceed as party-plaintiffs in the Circuit Court of St. Louis County, Missouri in Cause No. 897969 which had been filed prior to the issuance of the District Court's Order of Injunction.

2. That upon the dissolution of the Order of Injunction, the District Court sitting in admiralty would retain its exclusive jurisdiction over the issues of (1) Appellees' right to limit liability, (2) the proper value of the Limitation Fund, and (3) all matters affecting the right of Appellees to limit liability herein, and that any decision in the above described state court action would not be res judicata as to those issues should they in any manner be embraced by any such decision in state court.

3. That if Appellants obtained in the aggregate a verdict or judgment against Appellees, or any of them, in the Circuit Court of St. Louis County in excess of the difference of the amount of the Limitation Fund as was previously stipulated by Appellees less the amount agreed to be paid by Appellees to Harold Byington, Sr. as and for his claim, Appellants would consent to a remittitur so that judgment would be entered in the aggregate equal to the difference between the amount of the Limitation Fund as originally stipulated by Appellees less the amount agreed to be paid by Appellees to Harold Byington, Sr.—each of the Appellants remitting in proportion to his or her respective loss—and that an injunction would issue restraining Appellants from exeucting [*sic*] thereon to the extent that any such judgment exceeded the amount remaining in the Limitation Fund.

*Jefferson Barracks Marine Serv., Inc. v. Casey*, 763 F.2d 1007, 1010-11 (8th Cir. 1985).